**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTHONY A. ARCEO,<br><br>                    Petitioner,<br><br>v.<br><br>JAMES E. TILTON, Secretary,<br><br>                    Respondent. | Case No. 07cv2131-W (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

### INTRODUCTION

This Report and Recommendation is submitted to United States District Judge Thomas Whelan pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On September 14, 2007, Petitioner, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, in the Eastern District of California.  Doc. No. 1 (Petition, hereafter "Pet.") at 6.[1]   The petition was transferred to

---

[1] The petition incorporates numerous documents, including evidence regarding the prison disciplinary action underlying the petition and documents relating to the inter-district transfer.  While some of these documents are organized into exhibits, the numbering is difficult to follow.  For the sake of simplicity, this Court cites pages as they are numbered on the docket.

this district in November 2007. Id. Petitioner is not challenging his conviction or sentence, but rather the California Department of Corrections' ("CDC") rescision of 120 days of good-time prison credits. Id. at 6-25. In February 2008, Respondent James E. Tilton[2] filed an answer, requesting that the petition be denied. Doc. No. 8 ("Answer"). Petitioner filed a traverse in March 2008. Doc. No. 9 ("Traverse").

This Court has carefully considered the above documents, as well as the record as a whole. Based thereon, and for the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 1994, Petitioner was convicted of one count of kidnaping with intent to commit rape, one count of forcible oral copulation, and two counts of rape by a foreign object, in violation of California Penal Code ("PC") §§ 207(a), 208(d), 288(c), & 289(a). Lodg. 2. For these crimes, and including enhancements based on previous similar felonies, Petitioner was sentenced to thirty-one years imprisonment. Id.

In June 1996, after Petitioner was incarcerated, a CDC disciplinary board found him guilty of possession of inmate-manufactured alcohol, in violation of California Code of Regulations § 3016. Doc. No. 1 at 49. Following a disciplinary hearing, he was assessed a 120 day forfeiture of good-time credits, among other penalties. Id. The following year, in November 1997, Petitioner again was convicted of possession of inmate-manufactured alcohol, and forfeited another 120 days of good-time credits. Id. at 47-48.

---

[2] Because Petitioner has been transferred to another prison, Robert Ayers is no longer a proper respondent. Therefore, the Court *sua sponte* substitutes as Respondent James E. Tilton, Secretary of the California Department of Corrections, in place of Robert Ayers.

Almost ten years later, in 2005-2006, Petitioner filed administrative appeals challenging the two 120-day credit losses. Id. at 38-46, 50-51.[3] The second-level appellate council denied Petitioner's appeals as time-barred, stating that Petitioner failed to provide sufficient justification for the almost decade-long delay in filing. Id. at 40, 42.

In 2006, Petitioner filed a habeas petition in the Los Angeles Superior Court contesting the credit losses, and, upon denial by that court, in the California Court of Appeal. Id. at 36-37. The superior court denied the petition on both substantive and procedural grounds, and the appellate court stated that, based on the location of the prison in which he was incarcerated, Petitioner had filed in the wrong venue, and was required to submit his petition in the Kern County Superior Court. Id.

In January 2007, Petitioner filed a habeas petition in the Kern County Superior Court, which denied his claims on both substantive and procedural grounds. Lodg. 2 & 3. He then re-filed in the California Court of Appeal, which issued a summary denial on February 22, 2007. Lodg. 4 & 5.

On April 9, 2007, the California Supreme Court received Petitioner's petition for review, found the petition to be untimely, and returned it unfiled. Lodg. 6. Citing Cal. Rule of Court 8.500(e), the supreme court stated that, as the lower appellate court denied the petition on February 22, 2007, the supreme court lost jurisdiction to act on the petition thirty days later, on March 24, 2007. Id.; Cal.

---

[3]Neither the record pertaining to Petitioner's administrative appeals, nor the petition itself specify precisely which 120-day credit forfeitures Petitioner contests. However, as Petitioner attaches reports from the 1996 and 1997 disciplinary hearings, Doc. No. 1. at 47-49, this Court presumes these are the challenged actions.

Rules of Court, Rule 8.500(e) (setting California Supreme Court filing deadlines).[4]  In September 2007, Petitioner filed the instant petition in the Eastern District of California, and it was transferred to the Southern District on November 5, 2007.  Doc. No. 1 at 4, 74.

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (LEXIS through 2005 legislation).

## DISCUSSION

Petitioner presents two claims, both of which concern CDC's cancellation of his good-time credits.  Pet.; Traverse.  First, Petitioner contends that the California Penal Code and In re Dikes, 121 Cal.App.4th 825 (2004), prohibit CDC from depriving Petitioner of more than thirty days of good-time credits per disciplinary offense, and that CDC therefore acted illegally by twice denying Petitioner 120 days' credits for possession of inmate-manufactured alcohol.  Pet. at 9, 18-22; Traverse at 4.  Second, Petitioner argues that CDC improperly

---

[4] Cal. Rule of Court 8.264(b)(1) states that the court of appeal's decision is finalized thirty days after filing, and Rule 8.500(e)(1) states that a petitioner must request review in the state supreme court within ten days of the court of appeal's finalized decision.  This would appear to provide Petitioner forty days (thirty days plus ten days) in which to ask the supreme court for review.  However, the state supreme court only granted Petitioner thirty days in which to seek review.  Lodg. 7.  Nonetheless, the petition was received forty-six days after the court of appeal's decision, and is thus time-barred under the forty-day standard as well.  Further, not only was any error in this regard harmless, but a federal court is prohibited from reviewing state court applications of state procedural law, and Petitioner does not argue for relief on these grounds.  Estelle v. McGuire, 502 U.S. 62, 68 (1991); Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999).

discriminated against him as a repeat offender, and violated state and federal law when it denied him more good-time credits than other, non-repeat offenders. Pet. at 11, 15-17; Traverse at 5.

Respondent contends that the petition was filed after the expiration of the Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations, and must therefore be dismissed. Answer at 6-7. Respondent further argues that as the superior court denied the petition as both untimely and unexhausted at the administrative level, and as the state supreme court rejected the petition as untimely under state procedural rules, the petition is procedurally defaulted. Id. at 4-6. Finally, Respondent contends that even if this Court were to reach the merits of the petition, Petitioner fails to state cognizable grounds for relief. Id. at 8.

### A.  The AEDPA Statute of Limitations

Timeliness under the AEDPA statute of limitations is a "threshold issue" that must be determined before consideration of a petition's merits. White v. Klitzkie, 281 F.3d 920, 921-22 (9th Cir. 2002). Respondent argues that Petitioner's claims are time-barred under AEDPA's one-year statute of limitations, thus precluding federal review. Answer at 6-7. Although he does not directly address the statute of limitations, Petitioner contends that his delay in filing is excusable, stating that he did not believe the 1996 and 1997 deprivations of good-time credits were wrongful until reading relevant case law in 2005.[5] Pet. at 17; Traverse at 4.

---

[5] At one point Petitioner avers that, in 1996, he became aware of CDC's alleged wrongdoing. Pet. at 17. However, this appears to be a typographical error, because the case Petitioner states alerted him to CDC's allegedly illegal actions, Dikes, (Traverse at 4) was published in 2004. At another point, he states that he first read Dikes in 2006, but this, too, appears to be an error, as he filed administrative appeals in 2005 that referred to the case. Doc. No. 1 at 38-46.

AEDPA imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d) (West Supp. 2006). Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court." Id. § 2244(d)(1). This includes petitions challenging administrative decisions rather than state court judgments. See Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004) (AEDPA statute of limitations applies to prisoner challenging revocation of good-time credits); Redd v. McGrath, 343 F.3d 1077, 1080 (9th Cir. 2003) (assuming without deciding that the AEDPA statute of limitations applies to parole board decisions). The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

When a habeas petitioner challenges a correctional institution's administrative decision, § 2244(d)(1)(D) applies. Redd, 343 F.3d at 1084. The statute of limitations therefore begins to run the date on which the prisoner "could have learned of the factual basis for his claim through the exercise of due diligence," defined as the date on which the administrative decision became final. Id.; 28 U.S.C.

§ 2244(d).

    1.   <u>AEDPA as Applied to Petitioner's Petition</u>

Petitioner challenges the sufficiency of the disciplinary hearing, and the subsequent revocation of his good-time credits. Pet. These events thus constitute the "important facts" underlying his claims. <u>Redd</u>, 343 F.3d at 1084-85. Petitioner was assessed his first 120-day credit forfeiture on July 6, 1996 (Doc. No. 1 at 47-48), and his second on December 2, 1997, (<u>id.</u> at 49). Petitioner received formal notice of the second disciplinary decision on December 31, 1997. Doc. No. 1 at 48.

Under the California Code of Regulations ("CCR"), a prisoner must file any appeal of an administrative decision within fifteen working days. 15 CCR § 3084.6(c). Petitioner was therefore required to appeal the later credit forfeiture by January 23, 1998. As he failed to do so, the decision was finalized on th date.[6] 28 U.S.C. § 2244(d) (statute of limitations begins on day when "with exercise of due diligence" petitioner could determine factual predicate for his claims); <u>Shelby</u>, 391 F.3d at 1066 (statute of limitations begins when prisoner could no longer appeal administrative decision).

Petitioner therefore had one year, until January 23, 1999, to toll the statute of limitations by filing his habeas petition in state court. 28 U.S.C. § 2244(d). Petitioner did not file his state court petition until September 18, 2006 (Doc. No. 1 at 36), nearly eight years after the AEDPA statute of limitations expired. His petition is thus

---

[6] While Petitioner ultimately filed an administrative appeal, he failed to do so until almost eight years after receiving notice of the later credit denial, and the appeal was denied as untimely. Doc. No. 1 at 38-46. As discussed below, the Court does not find that his extremely tardy appeal was the product of "due diligence," such that the limitations period should be tolled. 18 U.S.C. § 2244(d); <u>McCleskey v. Zant</u>, 499 U.S. 467, 498 (1991) (due diligence requires a petitioner to "conduct a reasonable and diligent investigation" of his potential claims).

untimely, and barred from federal review. 28 U.S.C. § 2244(d).

2.  <u>Alternate Start Date for Statute of Limitations and Equitable Tolling</u>

Petitioner contends that his delay in filing is excusable because he did not believe the 1996 and 1997 deprivations of good-time credits were wrongful until 2005, when he read <u>Dikes</u>, 121 Cal.App.4th 825. Pet. at 17; Traverse at 4. Though Petitioner does not explicitly argue such, these statements could be construed as contentions that (1) the AEDPA statute of limitations should have begun with the publication of <u>Dikes</u>, and/or (2) he is entitled to equitable tolling for his lack of legal knowledge. The Court has a duty to construe Petitioner's statements liberally, and thus addresses these arguments on his behalf. <u>Allen v. Calderon</u>, 408 F.3d 1150, 1153 (9th Cir. 2005) (courts must "construe *pro se* habeas filings liberally"); <u>Bellgarde v. State of Montana</u>, 123 F.3d 1210, 1213 (9th Cir. 1997).

A judicial opinion may serve as the starting point of the AEDPA statute of limitations only in those limited circumstances where the United States Supreme Court newly recognizes a federal constitutional right. 28 U.S.C. § 2244(d)(1)(D) (limitations period may begin when "the [constitutional] right asserted was newly recognized by the Supreme Court and made retroactively applicable"). As <u>Dikes</u> is a California appellate opinion, and as the portion of that opinion on which Petitioner relies interprets a section of the California Penal Code, it is clearly outside the parameters of Section 2241(d)(1)(D). <u>Dikes</u>, 121 Cal.App.4th 825; Pet. at 17; Traverse at 10. The publication of <u>Dikes</u> is therefore not the starting point of the AEDPA statute of limitations.

Further, Petitioner's statements that he did not read <u>Dikes</u> until 2005, approximately seven years after the CDC disciplinary decision was

finalized, do not support equitable tolling. To benefit from equitable tolling, a petitioner must establish (1) that he has been pursuing his rights "diligently," and (2) that some "extraordinary circumstance" stood in the way of timely filing. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." <u>Miranda v. Castro</u>, 202 F.3d 1063, 1066 (9th Cir. 2002) (quotation and citation omitted).

Diligence requires a dedicated pursuit of one's rights, and a petitioner cannot sit on these rights and subsequently argue for tolling. <u>Pace</u>, 544 U.S. at 418. Here, Petitioner waited almost nine years after the latest credit revocation to file his state habeas petition, and this does not constitute the requisite diligence. <u>See</u> <u>id.</u> at 419 (petitioner "waited years, without any valid justification to assert these claims ... Had petitioner advanced his claims within a reasonable time of their availability, he would not now be facing any time problem") (footnote omitted).

Additionally, belated knowledge of the potential legal basis for a habeas petition does not constitute an "extraordinary circumstance" excusing timely filing. The AEDPA statute of limitations "begins when the prisoner knows (or through due diligence could discover) the important facts, *not when the prisoner recognizes their legal significance.*" <u>Hasan</u>, 254 F.3d 1150, 1154 n.3 (emphasis added). Petitioner contests credit revocations, the most recent of which occurred in 1997. Pet.; Doc. No. 1 at 48 (notice of credit revocation). As discussed above, the administrative action was finalized in 1998 and, after that point, there were no more "important facts" to discover. Petitioner's allegation that he did not realize the potential legal

significance of the credit revocations until 2005 is therefore insufficient to toll the statute of limitations. Id.

Because the petition was filed almost eight years after the statute of limitations expired, and because there is no basis for equitable tolling, the Court **RECOMMENDS** that the petition be **DENIED** as untimely.

### B. Procedural Default

Respondent contends that Petitioner's petition is procedurally defaulted because (1) Petitioner failed to timely present his claims for review before the California Supreme Court, (2) Petitioner failed to exhaust administrative remedies before seeking judicial relief, and (3) Petitioner failed to timely bring his initial habeas petition in state court. Answer at 4-6. Petitioner does not directly address the issue of procedural default.

A habeas petition is procedurally defaulted when the last reviewing state court dismisses it for failure to comply with a state rule of procedure. Trest v. Cain, 522 U.S. 87, 89 (1997). Procedural default is an affirmative defense, and the "ultimate burden of proving the adequacy of the [procedural bar]" is upon the party asserting the defense. Bennett v. Mueller, 322 F.3d 573, 585-86 (9th Cir. 2003).

To preclude federal review, the state court must have "actually relied" upon a procedural rule that is both "independent" of federal law and "adequate" to support the state court's judgment. Carter v. Giurbino, 385 F.3d 1194, 1196-98 (9th Cir. 2004) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Once the party asserting procedural default proves these elements, federal courts are barred from reviewing the claims unless the petitioner demonstrates either cause for the default and actual prejudice resulting from the alleged constitutional violations, or that failure to consider the claims will

result in a fundamental miscarriage of justice. Id.

### 1. Petition for Review Before the California Supreme Court

On February 22, 2007, the California Court of Appeal denied Petitioner's habeas petition, and Petitioner subsequently filed a new petition for review in the California Supreme Court. Lodg. 5 & 6. On April 9, 2007, the California Supreme Court received the petition for review, and returned it unfiled, stating that it was untimely under Cal. Rules of Court, Rule 8.500(e) ("Rule 8.500(e)"). Lodg. 6; Rule 8.500(e) (stating that a "petition for review must be served and filed within 10 days after the Court of Appeal decision is final"). Respondent contends that this denial constitutes procedural default, such that the petition is barred from federal review. Answer at 5. This argument fails. Respondent does not meet his burden of demonstrating that Rule 8.500(e) is "adequate" to support procedural default, as defined by the rule's having been "firmly established and regularly followed" in habeas proceedings. Carter, 385 F.3d at 1196-98.

As discussed above, to establish procedural default, Respondent must show that the state court "actually relied" upon a state procedural rule that is both "independent" from federal law and "adequate" to support the state court's judgment. Carter, 385 F.3d at 1196-98. Because the California Supreme Court cited no other reason for returning the petition unfiled, there is no question that the court "actually relied" upon Rule 8.500(e) in making its decision. Id.; Coleman v. Thompson, 501 U.S. 722, 735 (1991) (procedural bar applies when state court "clearly and expressly" relies on state ground).

It also is clear that the application of Rule 8.500(e) was an "independent" state law ground upon which to deny review of the petition. Because the state supreme court returned the petition

unfiled, its decision to deny review did not "fairly appear[] to rest primarily on resolution of [the petitioner's federal] claims, or to be interwoven with those claims." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Further, Rule 8.500(e) is a purely procedural rule governing the timing of petitions in state court. Therefore, it is also independent in that it is "not interwoven with the federal law." Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).

However, Respondent does not show that Rule 8.500(e) is adequate by merit of having been "firmly established and regularly followed" in the habeas context. Carter, 385 F.3d at 1198. Specifically, Respondent fails to demonstrate that the rule is regularly applied by the California Supreme Court to deny habeas petitions. Answer. In fact, Respondent does not cite a single case in support of such proposition. Id.

The Court's own research also fails to establish that Rule 8.500(e) consistently has been applied in the habeas context. While the rule regularly is invoked to deny *direct appeals* from convictions, case law does not support its application to *collateral proceedings*, such as habeas petitions. See Carey v. Saffold, 536 U.S. 214, 222 (2002) (majority states that a habeas petitioner must file his petition for review in the California Supreme Court within a "reasonable" amount of time after the intermediate appellate court's denial); but cf. id. at 230 (dissent states that majority position is a "misinterpretation of California law," and previously-numbered version of Rule 8.500(e) applies, such that a petition for review must be filed within ten days of the appellate court's denial).

Given Respondent's failure to provide any support for his argument, and the U.S. Supreme Court's holding, Respondent does not meet his

burden of showing that Rule 8.500(e) regularly is applied to habeas petitions. See Bennett, 322 F.3d at 585 (burden of proving procedural default on state because "it is the state, not the petitioner, often appearing *pro se*, who has at its hands the records and authorities to prove whether its courts have regularly and consistently applied the procedural bar"). Petitioner's petition is therefore not procedurally defaulted on these grounds.

    2.   <u>The Superior Court's Denial for Failure to Exhaust Administrative Remedies</u>

Respondent cites the Kern County Superior Court's denial of Petitioner's habeas petition for failure to exhaust administrative remedies, and contends that this denial constitutes procedural default.[7] Answer 4-5. In a one-and-one-half-page order denying the petition, the superior court stated that Petitioner's failure to timely file an administrative appeal of CDC's disciplinary action "leads to the conclusion that Petitioner is in violation of the rule that an inmate cannot seek relief in the courts unless he first exhausts his administrative remedies." Lodg. 3; see also id. ("Petitioner has not exhausted his administrative remedies"). In support, the court cited <u>In re Dexter</u>, 25 Cal.3d 921, 925 (1979) and <u>In re Muszalski</u>, 52 Cal.App.3d 500, 503 (1975). The superior court's denial on these grounds constitutes an "independent" and "adequate" state procedural ground upon

---

[7] A habeas petition is procedurally defaulted when the last reviewing state court dismissed it for failure to comply with a state rule of procedure. Trest, 522 U.S. at 89. Here, the last reviewing state court is the California Supreme Court. However, as discussed above, it is unclear whether that court's denial of the Petitioner's petition supports procedural default. Therefore, and in order to address all of Respondent's procedural default arguments, this Court "looks through" the state supreme court's opinion to that of the lower courts. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). As the appellate court issued an unreasoned "postcard" denial, the "last reasoned opinion" on the petition was that of the Kern County Superior Court. Ylst, 501 U.S. at 803.

which the court "actually relied." Carter, 385 F.3d at 1196-98. The petition is thus procedurally defaulted, and improperly before this Court.

        a. <u>The Superior Court's Holding as Grounds for Procedural Default</u>

As noted, the superior court explicitly denied the petition on the grounds that Petitioner failed to exhaust administrative remedies, and cited two cases to support its ruling. Lodg. 3. Further, the cited portions of both of those cases contain the heading "Exhaustion of Administrative Remedies," and discuss the subject at length. <u>In re Dexter</u>, 25 Cal.3d at 925; <u>In re Muszalski</u>, 52 Cal.App.3d at 503. It is therefore clear that this was a ground upon which the court "actually relied." <u>Carter</u>, 385 F.3d at 1197; <u>Coleman</u>, 501 U.S. at 735.

Petitioner's failure to exhaust administrative options also is an independent ground supporting procedural default. Because the rule is purely one of state procedure, and does not rest on federal grounds, the superior court denied the petition "solely as a matter of state law," <u>Carter</u>, 385 F.3d at 1198. <u>See</u> <u>also</u> <u>In re Dexter</u>, 25 Cal.3d at 925; <u>In re Muszalski</u>, 52 Cal.App.3d at 503 (discussing exhaustion requirement solely with citation to California law). Nor was the superior court's denial interwoven with the federal basis for any of Petitioner's claims. <u>Long</u>, 463 U.S. at 1040-41. The court did not reach the claims' merits, but merely stated that Petitioner failed to timely appeal the disciplinary action of which he complained. Lodg. 3. The denial was therefore based on independent grounds.

Finally, the requirement that a petitioner exhaust administrative options is adequate in that it is "firmly established and regularly followed." <u>Carter</u>, 385 F.3d at 1198 (defining "adequacy"). In 1975,

California courts recognized it as "well settled that a litigant will not be afforded relief in the courts unless and until he has exhausted available administrative remedies." In re Muszalski, 52 Cal.App.3d at 503. Since then, courts consistently have applied the rule when denying habeas petitions. See, e.g., In re Hudson, 143 Cal.App.4th 1, 7 (2006); Wright v. State, 122 Cal.App.4th 659, 665 (2004); In re Lusero, 4 Cal. App.4th 572, 574 (1992). The rule is thus both well established and commonly applied.

Petitioner's failure to exhaust administrative remedies therefore renders the petition procedurally defaulted. As such, the petition is improperly before this Court, and, absent Petitioner's showing that circumstances outside his control caused the default, should be denied.

        b.    "Cause and Prejudice" or "Actual Innocence" Necessary to Overcome Procedural Default

To overcome the procedural default, Petitioner must demonstrate either cause for the default and prejudice resulting from the alleged constitutional violations, or that he actually is innocent, such that a failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750 (standard based on "the important interest in finality" served by state procedural rules and the "significant harm ... that results from the failure of federal courts to respect them"); Boyd v. Thompson, 147 F.3d 1124, 1126 (9th Cir. 1998). Petitioner does not meet this burden.

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him," Coleman, 501 U.S. at 753 (emphasis in original), while prejudice is that resulting from the alleged constitutional errors, id. at 750. Unless a petitioner demonstrates excusable cause for his

procedural default, a reviewing federal court need not reach the question of prejudice. <u>Engle v. Isaac</u>, 456 U.S. 107, 134 (1982). Petitioner must therefore make an initial showing that external factors caused his failure to exhaust administrative remedies.

Petitioner states that he did not realize the alleged wrongfulness of the good-time credit denial until he read <u>Dikes</u> in 2005. Pet. at 17; Traverse at 4.  While this may be construed as an argument that an external force prohibited him from timely filing his administrative review, this argument fails.  To satisfy the cause requirement, a petitioner "must conduct a reasonable and diligent investigation" of his claims.  <u>McCleskey v. Zant</u> 499 U.S. 467, 498 (1991).  As stated by the Kern County Superior Court, <u>Dikes</u> did not state new law concerning an administrative body's power to revoke good time credits, it merely quoted the relevant portion of the penal code and explained how it applied.  Lodg. 3; <u>Dikes</u>, 121 Cal.App.4th at 834-35; PC § 2932(a)(4) (describing procedure for revoking good-time credits).  The statute which Petitioner claims CDC violated, and which is summarized in <u>Dikes</u>, has been effective since 1987, long before the credit revocation occurred.  <u>Dikes</u>, 121 Cal.App.4th at 834-35; PC § 2932(a)(4).

With diligence, Petitioner could have discovered the alleged legal basis for his claims within the time allotted for him to appeal the disciplinary action.  He did not do so.  He also did not avail himself of the opportunity to appeal on any other grounds for nine years.  This does not constitute the diligence required to demonstrate "cause," and overcome the procedural default.  See <u>McCleskey</u>, 499 U.S. at 498 (defining diligence).  As Petitioner does not demonstrate excusable cause for his procedural default, the Court need not reach the question of prejudice.  <u>Engle</u>, 456 U.S. at 134.

Petitioner also may overcome the procedural default if he is actually innocent of the offenses for which he was penalized the good-time credits, such that a failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. Petitioner does not make this argument, and the Court sees no evidence to support it. The Court therefore declines to address the issue.

Petitioner's alleged ignorance of the legal basis for his claims does not constitute an external cause justifying his failure to exhaust his administrative remedies. There also is no evidence that Petitioner is innocent of the initial crimes or those resulting in the credit forfeiture. The procedural bar thus stands, and Petitioner's claims are improperly before the Court.

3. Failure to Litigate in a Timely Manner

Respondent argues that Petitioner unjustifiably delayed raising his habeas claims in state court, and that the petition is thus procedurally barred. Answer at 4. However, while the rule requiring petitioners to submit their petitions in a timely fashion is independent from federal law and regularly applied, see, e.g., In re Sanders, 21 Cal.4th 697, 703, Respondent does not meet his burden of showing that the Kern County Superior Court "actually relied" on these grounds when denying Petitioner's petition.

When denying Petitioner's state habeas petition, the Kern County Superior Court stated in relevant part as follows:

> Petitioner has not exhausted his administrative remedies. He submitted an appeal, but it was rejected at the second level of review as untimely. Petitioner claims this rejection was wrongful because he submitted his appeal as soon as he discovered his issue.
>
> Petitioner fails to state a prima facie case of relief.
>
> Petitioner failed to exhaust his administrative remedies.

> His claim that his appeal should not have been rejected as untimely because he submitted it soon after the decision in the <u>Dikes</u> case was issued is without merit. While the decision in <u>Dikes</u> was issued in 2004, shortly before Petitioner submitted his appeal, its discussion of Penal Code § 2932 did not constitute new law ... That is, Petitioner ought to have been able to discover his issue long before the decision in <u>Dikes</u> was ever issued. However, he did not, and he does not explain why he did not. Therefore, the rejection of his appeal as untimely was proper. And that leads to the conclusion that Petitioner is in violation of the rule that an inmate cannot seek relief in the courts unless he first exhausts his administrative remedies.
>
> Lodg. 3.

The superior court's opinion begins and ends with the conclusion that it denies the petition for failure to exhaust administrative remedies. <u>Id.</u> The discussion of timeliness is merely a step in reaching that holding, and does not appear to be an independent basis for dismissal. <u>Id.</u> ("[t]herefore, the rejection of his appeal as untimely was proper. *And that leads to the conclusion* that Petitioner [failed to exhaust] his administrative remedies"). This appears especially true as the court cites authority to support the dismissal for failure to exhaust, but none concerning timeliness. <u>Id.</u> It is therefore unclear whether the superior court "actually relied" on untimeliness grounds when dismissing the petition. <u>See</u> <u>Coleman</u>, 501 U.S. at 735 (state court must "clearly and expressly" rely on procedural bar). And, as Respondent offers no convincing argument to clarify this issue, he fails to meet the burden of showing otherwise. <u>Bennett</u>, 322 F.3d 585 (describing state's burden to prove procedural bar). Respondent therefore fails to demonstrate that the petition is procedurally defaulted on this basis.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, Petitioner's petition is (1) time-barred by the AEDPA statute of limitations, and (2) procedurally

defaulted for failure to exhaust administrative remedies. Petitioner does not show that he is entitled to equitable tolling, nor does he demonstrate cause for his procedural default, or contend actual innocence. A reviewing federal court may not look beyond the time-bar and procedural default to the merits of the petition. 28 U.S.C. § 2244(d) (barring untimely petitions from federal review); Coleman, 501 U.S. at 729-30 (procedural default bars federal review).

Therefore, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that judgment be entered denying the petition.

**IT IS ORDERED** that no later than **June 24, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 15, 2008**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

DATED:   June 5, 2008

　　　　　　　　　　　　　　　　　BARBARA L. MAJOR
　　　　　　　　　　　　　　　　　United States Magistrate Judge

COPY TO:

HONORABLE THOMAS J. WHELAN
U.S. DISTRICT JUDGE

ALL COUNSEL